COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.    SUFFOLK SUPERIOR COURT
C.A. No. 20-

JONATHAN A. AYALA )
Plaintiff )
)
v. )
)
MASS STATE POLICE OFFICER, MATTHEW )
DUNNE, MSP RYAN SCEVIOUR and the )
COMMONWEALTH OF MASSACHUSETTS )
Defendants )

## COMPLAINT AND REQUEST FOR JURY TRIAL

### INTRODUCTION

1. This is an action in civil rights and tort to recover for injuries inflicted a Massachusetts State Police trooper on August 28, 2017 when he pulled plaintiff Jonathan A. Ayala from a vehicle, slammed him to the pavement in the travel lane of a busy highway, kneed him in the back and punched him in the head while cuffing his wrists so tightly as to draw blood, wrenched him up from the ground by the shoulder so hard as to cause injuries that required multiple surgeries, arrested him without cause and then with the help of another trooper who was on the scene tried to hide what he had done.

2. Just before Trooper Matthew Dunne made the arrest Ayala heard him tell a police supervisor on the phone, "Sergeant, I got this kid roughed up in front of over 500 people," (referring to motorists creeping by the scene in heavy traffic) as Dunne sought advice on what he could arrest Ayala for. He arrested Ayala on two minor charges that the Worcester District Court threw out the next day.

3. Ayala now brings this action in civil rights for the use of excessive force, conspiracy in furtherance of the same and under state law for negligence, assault and battery, intentional infliction of emotional distress, and malicious prosecution.

### JURISDICTION

3. On information and belief each individual party is subject to the jurisdiction of this Honorable Court, and/or the Court has personal jurisdiction under the Massachusetts Tort Claims Act.

4. There is no reasonable likelihood that plaintiff's recovery will be less than or equal to $25,000.

1

5. This Honorable Court has original subject matter jurisdiction of the action generally pursuant to M.G.L. c. 212, §§ 3 & 4; it has jurisdiction of any claims that lie for conduct of a person deemed to have acted as a public employee pursuant to M.G.L. c. 258; and the Court has concurrent jurisdiction over the federal claims. The Federal claims are based on 42 U.S.C. § 1983 for violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution. Plaintiff also brings this action pursuant to Massachusetts State Civil Rights Statute, and under the Massachusetts Declaration of Rights.

## VENUE

6. Venue in this Court is proper per M.G.L. c. 223, § 1 and 258 § 3.[1]

## PARTIES

4. Plaintiff Jonathan A. Ayala is a resident of the Worcester, Worcester County, Massachusetts.

5. Defendant Trooper Matthew Dunne, ("Trooper Dunne") was at all pertinent times a duly appointed and sworn Massachusetts State Police Trooper and resides at 400 West Street, Braintree, Norfolk County Massachusetts.

6. Defendant Trooper Ryan Sceviour, ("Trooper Sceviour") was at all pertinent times a duly appointed and sworn Massachusetts State Police Trooper and resides at 34 Leland Road, Marshfield, Plymouth County, Massachusetts.

7. The Commonwealth of Massachusetts is a sovereign subject to limited liability pursuant to M.G.L. c. 258 for negligence of its agents, servants, and employees as well as negligence of its agency the Massachusetts State Police. The Commonwealth's usual and primary place of business in Boston, Suffolk County, Massachusetts.

8. Both Trooper Dunne and Sceviour are sued in their individual capacity.

## FACTS

9. Each of the foregoing paragraphs is incorporated as if fully set forth herein.

10. At all times material to the complaint, the Commonwealth of Massachusetts employed Troopers Dunne and Sceviour as a duly appointed and sworn Massachusetts State Police ("MSP") officers.

---

[1] Chapter 258 § 3 provides "[A]ll civil actions brought against a public employer on a claim for damages cognizable under this chapter shall be brought in the county where the claimant resides or in the county where such public employer is situated, except that in the case of the commonwealth such civil actions shall be brought in the county where the claimant resides or in Suffolk county." *Emphasis added.*

2

11. At all pertinent times Trooper Demos and Sceviour acted as alleged in this Complaint under color of the laws, statutes, ordinances, and/or regulations of the Commonwealth of Massachusetts.

### The Incident of September 28, 2017

12. On September 28, 2017, a Thursday, at approximately 4:05 pm, Defendant Trooper Dunne was on patrol duties from his assigned barracks, State Police Holden and was operating a marked Massachusetts State Police cruiser.

13. Trooper Sceviour was also on patrol duties and assigned to the State Police barracks in Holden, Massachusetts.

14. Trooper Dunne was observing traffic in Route 290 westbound in the City of Worcester.

15. At that hour the traffic was bumper-to-bumper and moving slowly.

16. Trooper Dunne noticed Ayala with his passenger Gonzalez, traveling in the center lane of the highway.

17. Trooper Dunne, pulled Ayala over, supposedly because the car he was driving did not have an inspection sticker.

18. According to Trooper Dunne's report and his Statement of Facts in Support of an application for a criminal complaint filed with the Worcester District Court, he alleged after seeing the car bearing MA registration number 6FL936 he "conducted a routine CJIS query on the vehicle."

19. The CJIS (Massachusetts Department of Criminal Justice Information Services) search was anything but routine.

20. Trooper Dunne did the CJIS query on this vehicle because Ayala's ethnicity peeked his interest.

21. CJIS system manages and administers the Commonwealth's law enforcement information, criminal enforcement information, criminal records systems as well as firearms records and the Commonwealth's post-conviction victim notification program.

22. According to Dunne's report, after conducting a "routine" CJIS check of Ayala's car he noted the vehicle had been registered on July 28, 2017 but had not been inspected.

23. Ayala was not the owner of the car was he was driving.

24. That's when Trooper Dunne initiated a vehicle stop of Mr. Ayala's car which came to rest in the westbound breakdown lane just before Exit 18.

25. Trooper Dunne first approached Ayala and requested his license and registration.

26. Ayala complied by providing him with his Florida license (FL OLN: A400-421-89-143-0) and the vehicle's registration and explained to Trooper Dunne he did not own the car.

27. Ayala also explained to Trooper Dunne he lived in Florida but would come to visit Worcester during the summer.

28. Demonstrating that the stop or the query was anything but "routine" Trooper Dunne also demanded that Ayala's passenger, Gonzalez, provide him with his identification.

29. Ayala's front passenger, Mr. Gonzalez, also a Hispanic male, was required to provide Trooper Dunne with his identification which Trooper he Dunne queried with CJIS to check if he had a criminal history or a history of warrants.

30. The contrived excuse given in official reports by Trooper Dunne, for checking on Mr. Gonzalez's driving license in the CJIS was related to the fact Gonzalez ". . .(w]as not wearing a seatbelt."

31. Shortly after he stopped Ayala's car, Trooper Dunne radioed the State Police and asked for back-up after he discovered Ayala had a previous closed and dismissed firearm related charge in the past.

32. Trooper Dunne would have been privy that his case had been *nolle prosequi*.

33. Trooper Dunne alleged in a report Ayala's Florida's driving license was "suspended" allegedly for failure to comply with a traffic summons dating back to August of 2014.

34. Ayala's Florida license was not suspended and indeed he also had a valid Massachusetts driver's license as well.

35. Trooper Dunne walked towards Ayala to hand him a traffic citation for the inspection sticker only.

36. Dunne explained to Ayala what he had to do if he wanted to appeal the ticket.

37. But that's when Trooper Sceviour arrived for assistance and approached the passenger side of Ayala's vehicle.

38. As Trooper Sceviour approached the passenger side of the car, Ayala observed Sceviour had his hand on his service weapon as if he was ready to draw it.

39. As Trooper Sceviour looked on the floor behind the passenger compartment he yelled "Gun, gun" and he drew his weapon.

40. Simultaneously, Trooper Dunne also drew and pointed his service weapon in Ayala's direction and yelled "Where the fuck is the gun?"

41. Trooper Dunne told Ayala to put his hands up.

42. Ayala, petrified by these developments immediately complied and attempted to explain he did not have a gun.

43. Trooper Dunne attempted to drag Ayala from the drivers' window but instead opened the driver's side door, pulled and yanked Ayala into the right lane of travel of Route 290.

44. Dunne slammed Ayala face down onto the paved portion of Route 290.

45. When he slammed Ayala and placed him prone on the ground, Trooper Dunne dug his knees in Ayala's back and began to punch him in the back of the head and neck area as he kneed him in his right hip and low back area.

46. Ayala asked Trooper Dunne to get him out of the road because of the close proximity of cars traveling on the road.

47. Once on the ground he pulled his hands behind his back, twisted them and handcuffed his wrists.

48. Ayala was complaint with every request made by Trooper Dunne and there was no need to use of force on a complaint person.

49. Trooper Dunne asked to get up from the ground but he couldn't because he had a left knee injury.

50. That's when Trooper Dunne forcefully scooped his arms underneath Ayala's right arm picked Ayala up and dragged to the front of his cruiser by his right shoulder.

51. Trooper Dunne's actions injured Ayala's right shoulder, right hip, right low-back area, his right wrist area.

52. The forceful application and the tightening of the handcuffs caused cuts and bleeding to Ayala's right wrist as well as swelling to his left wrist.

53. At the same time Trooper Sceviour pulled out Mr. Gonzalez, handcuffed him and placed him in the back of his own cruiser.

54. After removing Ayala and Gonzalez from the car both troopers searched them and found the pellet gun under the front passenger seat.

55. They also searched Ayala's phone without a warrant or his consent.

56. They wrote notes from information they extracted from perusing through Ayala's phone.

57. Trooper Dunne told Ayala whom he had already placed in the back of his SUV cruiser "You're a fucking idiot."

58. Ayala asked Dunne what was his problem.

59. Trooper Dunne told him if he had told him from the beginning he had a BB-gun in the car he would have let him drive away.

60. Ayala told Dunne all he had was a pellet gun and were it was found $CO2$ cartridges and pellet cans were visible.

61. To all of this Trooper Dunne had not observed and had no basis to believe that Ayala conduct met any of the Massachusetts State Police policy criteria that could justify the use of such force on a subject accused or suspected of no crime, not fleeing, and whose conduct could not be reasonably perceived as assaultive or threatening in any way, shape or form as to any person, including the defendants.

62. After Defendants completed searching through the car and through Ayala's phone, Ayala complained to Trooper Dunne about his tight handcuffs, that he was losing feelings in his hands.

63. Ayala asked Trooper Dunne to please loosen his handcuffs, he could not feel his wrist.

64. Instead of loosening his handcuffs Trooper Dunne told Ayala "shut the fuck up."

65. After conducting a warrantless search of Ayala's phone, Ayala overheard Trooper Dunne conversation with one of his superior officers during a phone call that he made.

66. Ayala heard Trooper Dunne say "Sergeant, I got this kid roughed up in front of over 500 people on the highway."

67. Ayala overheard Trooper Dunne discussing with his sergeant whether he should arrest Ayala or not.

68. Ayala overheard Dunne asking the person on the other end of the line "What should I do with him?"

69. Trooper Dunne decided he would arrest Ayala and transported him to the State Police Holden barracks.

70. Ayala asked Dunne "You're taking me in for what?"

71. Dunne told him I let you know all your charges during booking.

72. There was no legal justification for any of Defendants' actions.

73. No reasonable officer would have assaulted Ayala or would have used the amount of force employed by Trooper Dunne.

74. No reasonable officer would have searched through Ayala's phone or arrested him for the incident.

75. At all times pertinent to this complaint Trooper Dunne knew that he could only use that amount of force that was reasonably necessary.

76. Trooper Dunne also knew that in accordance with Mass. State Police General Orders UOF- 04 regarding the use of Less Than Lethal Force, striking techniques could be used when reasonably necessary to achieve compliance or to control an assaultive subject.

77. He also knew that under Mass State Police General Order UOF-05 governing the use of force and reports, any time he used a striking technique he was responsible for preparing a use of force report.

78. Trooper Dunne did not prepare a use of force report in connection with Ayala's arrest.

79. Instead, he simply prepared a false, vague, and incomplete police narrative to hide the level of force he used and was required to document.

80. Dunne wrote: "I then removed Ayala from the vehicle and handcuffed him. Trooper Sceviour removed Gonzalez."

81. Dunne acknowledged that the handgun found in the car was a "replica pellet gun."

82. Ayala was booked at the State Police barracks in Holden and Dunne had difficulties taking out the right handcuff because it had cut into Ayala's right wrist.

83. To take it off, he had tight it some more so that he could put the key and loosen it.

84. When he took the handcuff from his writs Dunne noticed that the handcuff cut into Ayala's right wrist.

85. Ayala was re-handcuffed to a police bench this time on his left wrist only because his right hand and wrists was injured.

86. At the state police barracks Ayala continued to insist his Florida license had not been suspended.

87. In fact, Ayala showed his Massachusetts driver's license to Trooper Dunne while at the barracks.

88. Without any probable cause, Trooper Dunne arrested and maliciously prosecuted Ayala charging him with unlicensed operation of a motor vehicle.

89. The missing inspection sticker was not an arrestable offence.

90. Next day Ayala appeared in the Worcester District Court to respond to charges unlicensed operation of a motor vehicle and no inspection sticker.

91. Someone from the Court called the Mass. Dept. of Motor Vehicles and his charged of unlicensed operation was dismissed prior to arraignment.

92. On his charge of failing to inspect a motor vehicle, Ayala was found not responsible by Judge D'Angelo in the Worcester District Court.

### The Commonwealth's negligence : its policies, customs and practices on the use of force

93. The Commonwealth of Massachusetts MSP failed to adequately train, supervise, control, monitor and discipline officers in their use of force and in other key areas of law enforcement.

94. The Commonwealth failed to track officers use of force and to regularly evaluate such incidents and injuries arising therefrom so as to properly assess and control its officers.

95. The Commonwealth's failure to properly train included the failure to instruct Trooper Dunne on the applicable and acceptable police practices, on the applicable law and rules and procedures concerning the lawful use of force.

96. At all times pertinent hereto the Commonwealth and the MSP observed a policy, custom, and usage of failing to exercise discipline and control over the use of force by MSP officers and did so with deliberate indifference to the rights and well-being of person, including the plaintiff, whom they knew would become victims of excessive force.

97. The Commonwealth and the MSP have failed to monitor and control the use of force by MSP officers to assure that force would be used no more often, and to no greater degree, than was necessary and lawful.

98. The aforesaid policy effectively allowed officers to operate in the field with little supervision and without effective monitoring and at all times pertinent hereto the defendant officer was aware that this was the case.

99. The aforesaid policy and usage of failing to enforce control and accountability for officers' use of force was in whole or in part the moving force behind Ayala's injuries as set forth herein.

100. The Commonwealth's failure to take corrective or disciplinary action against its officers upon notice of actions resulted in the excessive use of force in this case.

### Ayala's injuries

101. As a direct and proximate cause of Defendants' conduct, Ayala suffered physical and emotional injuries, described below.

102. On August 31, 2017 Ayala went to St. Vincent's Hospital and complained of right shoulder pain, right wrist pain from his handcuffs and arrest. He also complained of injuries to his left knee, right hip pain and bruising and injuries to his neck.

103. During his examination he had abrasions, on his right wrists and was experiencing paresthesia on the right wrist.

104. Ayala visited an orthopedic surgeon in April 2018 to check on his right shoulder

105. The surgeon diagnosed Ayala with a disorder of the rotator cuff, As a result of the unreasonable use of force Ayala reinjured his right shoulder, was diagnosed with a disorder of the rotator cuff, a superior labral tear from anterior to posterior ("SLAP lesion") of the shoulder.

106. An MRI of the right shoulder confirmed a small SLAP tear, partial thickness, bursal tear of the supraspinatus, loose bodies in the joint and chondromalacia of the glenoid.

107. Ayala underwent right shoulder arthroscopic posterior labral repair with posterior casulorrhaphy.

108. In addition, he suffered an injury to the ulnar nerve which required a cubital tunnel release of the medial right elbow and neural lysis of the radial sensory nerve at the level of the wrist.

109. He was recently diagnosed by doctors at UMass Memorial Medical Center with ulnar neuropathy on the right elbow of the right upper extremity and a neuropathy of the right radial nerve.

110. A recent electromyographic (EMG) of his right upper extremity showed abnormalities: absent dorsal ulnar cutaneous sensory potential.

111. On January 20, 2020 Ayala underwent another MRI of his shoulder and right upper extremity was ordered because of a history of right wrist pain and swelling from an injury in 2017.

112. It demonstrated extensor carpi radialis longus and extensor carpi radialis minimal synovitis.

113. A local orthopedic doctor has recommended a secondary surgery in the elbow region to remove and stabilize the tricep tendon so that it will not snap medially and cause discomfort and to assess the ulnar nerve for possible re-transposition and/or sub-muscular position.

114. Ayala also incurred medical expenses, approximately over $58,000 in reasonable medical expenses.

115. He has also experienced emotional injuries and has experienced physical manifestations of those injuries.

116. As a direct and proximate cause of joint actions of all defendants, Ayala suffered violation of his constitutional rights under the Fourth and Fourteenth Amendment to the United States Constitution and under the Massachusetts Declaration of Rights, and he sustained severe physical injury, permanent disability, disfigurement, medical expenses, pain and suffering, loss of enjoyment of life, emotional trauma, great pain of body and mind continuing to date as well as loss of time from his usual activities.

## COUNT I
### 42 U.S.C. § 1983: unreasonable force
### Trooper Dunne-Individually and Trooper Sceviour unreasonable search

117. Each of the foregoing paragraphs is incorporated as if fully set forth herein.

118. Trooper Dunne acting under color of law used unreasonable force against Ayala Melendez depriving him of his clearly established right to be free from the use of unreasonable force under the Fourth Amendment.

119. Trooper Dunne violated Ayala's constitutional rights by employing unreasonable force.

120. Both Dunne and Sceviour conducted a non-consensual warrantless search of Ayala's phone without probable cause.

121. Trooper Dunne acted with reckless disregard to Ayala's constitutional rights.

122. Trooper Sceviour acted with reckless disregard to Ayala's constitutional rights.

123. The unreasonable use of force caused Ayala injuries and to experience great pain of body and mind.

## COUNT II
### M.G.L. c. 258-Massachusetts Tort Claims Act
### Commonwealth of Massachusetts

124. Each of the foregoing paragraphs is incorporated as if fully set forth herein.

125. In removing Ayala from the car and taking him into custody Trooper Dunne failed to apply accepted standards for assessment of risk and the use of force by police, and he acted with such negligence, carelessness and gross negligence as to needlessly endanger and injury Ayala.

126. Sceviour conduct was negligent as well.

127. The plaintiff, by and through his counsel, on August 21, 2019, presented a claim in writing to the Massachusetts Attorney General and to the Executive Office of Public Safety, via service by certified mail, pursuant to M.G.L. c. 258 § 4, for the injuries complained of herein inflicted by public employees as result of their misconduct and negligent conduct by the public employee, Trooper Demos. Exhibit 1.

128. On August 26, 2019, the Executive Office of Public Safety and Security and the Attorney General acknowledged receipt of the notice and presentment letter. Exhibit 2.

129. To date the claim has not been settled or compromised and Ayala's counsel received no additional correspondence from the Commonwealth of Massachusetts.

130. Thus, Mr. Ayala complied with all conditions precedent to maintain bring this action in negligence against the Commonwealth under the Massachusetts Tort Claims Act for negligent conduct of its employees.

### COUNT III
### Assault & Battery
### Trooper Dunne - Individually

131. Each of the foregoing paragraphs is incorporated as if fully set forth herein.

132. Trooper Dunne committed an assault and battery without reason or cause on Ayala.

133. As a direct and proximate result thereof, the plaintiff suffered the injuries described above.

### COUNT IV
### Intentional Infliction Emotional Distress
### Trooper Dunne - Individually

134. Each of the foregoing paragraphs is incorporated as if fully set forth herein.

135. Defendant's outrageous actions, coupled with his unreasonable use of force constituted intentional infliction of emotional distress.

136. Defendant's subjected Ayala to reprehensible conduct knowingly, intentionally, willfully, purposely, maliciously and with such reckless disregard of the consequences as to display a conscious indifference to the danger of harm and injury.

137. As a direct result of the intentional conduct of the defendants in this count, Ayala suffered severe emotional distress and great pain of body and mind and experienced physical manifestations of his emotional distressed.

## COUNT V
## Conspiracy
### Troopers Dunne and Sceviour - Individually

138. Each of the foregoing paragraphs is incorporated as if fully set forth herein.

139. When Troopers Dunne and Sceviour pulled their firearms and thereby manifested a threat of the imminent use of deadly force they did so with an understanding previously made tacitly or explicitly between them that they would lie if need be to justify any use of excessive force that might ensue by either or both of them.

140. In beating, abusing, and injuring Ayala notwithstanding that he was compliant and did not by movement, gesture, or word do anything reasonably perceptible as a threat of imminent bodily harm, he did so in furtherance of the conspiracy to conceal the use of unnecessary force and with knowledge that Sceviour had joined with him and would cooperate in that enterprise.

141. After Ayala's arrest Troopers Dunne and Sceviour conspired to concoct and report a false story regarding the circumstances of the arrest and use of force in order to conceal evidence of constitutional violations.

## COUNT VI
## Malicious Prosecution
### Trooper Dunne

142. Each of the foregoing paragraphs is incorporated as if fully set forth herein.

143. Trooper Dunne arrest Ayala on the charge of being an unlicensed driver with actual or constructive knowledge that these accusations were false and did so solely for the purpose of hiding his own misconduct without regard for the legal duty of candor that he owed the court as a police officer or for Ayala's rights and interests.

144. The accusations were dismissed as being meritless.

145. As a direct result of trooper Dunne's intentional misconduct in prosecuting him Ayala suffered further distress and fear of being wrongfully subjected to legal sanctions.

## DEMANDS FOR RELIEF

The Plaintiff hereby respectfully requests the following relief:

1. All compensatory damages recoverable;
2. Injunctive relief;
3. All punitive damages recoverable;
4. All attorney's fees, costs and expenses allowable;
5. Joint and severally liability as to all defendants;
6. Strict liability against the owner and handler of the dog for the injuries caused;
7. All remedies available according to the law of damages for the plaintiff;
8. Any and all other relief as the Court deems just and proper.

## PLAINTIFF DEMANDS A JURY TRIAL AS TO ALL COUNTS IN THE COMPLAINT

Respectfully submitted,
JONATHAN A. AYALA, Plaintiff
By his attorneys,

/s/ Hector E. Pineiro
Hector E. Pineiro, BBO # 555315
Robert A. Scott BBO # 648740
Law Office of Hector E. Pineiro, P.C.
807 Main Street
Worcester, MA 01610
Tel. (508) 770-0600
hector@pineirolegal.com
robin@pineirolegal.com

DATED: August 27, 2020